IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

PEVELY HOSPITALITY GROUP, LLC )
d/b/a Super 8 Motel, )
)
and )
)
SERMAD AMIR, )
) Cause No: _____
Plaintiffs, )
)
vs. )
)
CITY OF PEVELY, MISSOURI, )
)
Defendant. )

## COMPLAINT

COME NOW Pevely Hospitality Group, LLC and Sermad Amir, by and through their undersigned counsel, and for their Complaint, state as follows:

### Parties

1.      Pevely, Missouri (the "City") is a fourth class city in the State of Missouri.

2.      Pevely Hospitality Group, LLC ("PHG") is a Missouri limited liability company, operating by and through its sole member, Sermad Amir.

3.      Sermad Amir ("Amir"), is a United States citizen of Pakistani descent, a practitioner of the Islamic religion.

### Venue and Jurisdiction

4.      Federal jurisdiction is proper pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under 42 U.S.S. § 1981, § 1983, and the United States Constitution.

5.      Venue is proper in this Court because the incident and actions alleged in this Complaint occurred within the district and the Defendants resides herein.

## **General Allegations**

6.      PHG is the owner of the property commonly known as the Super 8 Hotel, located

at 1711 Hwy Z, Pevely, MO 63070 (the "Property").

7.      In March 2018, PHG purchased the Property for purposes of operating a hotel on

the premises.  PHG paid $2,050,00 for the Property. Amir put his own personal assets into the

business to allow it to purchase the Property (the "Amir Investment").  PHG obtained bank

financing as well.  At all relevant times, Amir and PHG operated a Super 8 hotel on the Property

(the "Hotel").

8.      Shaiq Amir, Sermad Amir's father, has managed the Property since its opening in

2018.  Shaiq Amir is a United States citizen of Pakistani origin.

9.      Since purchasing the Property, it has been operated as Super 8 Hotel pursuant to a

franchise agreement (the "Franchise Agreement") with Wyndham Worldwide ("Wyndham"),

and a duly issued business license by the City (the "License").  At those times mentioned above,

said license was effective and in force.

10.      On or about November 18, 2021, the City administrator, Andy Hixon, had hand-

delivered a one-page letter notifying Plaintiffs that the City intended to close down the Property

on December 3, 2021 (the "City Letter").  A copy of the City Letter is attached as Exhibit A.

The substance of the City Letter is set forth below:

> This is your official notice that the City of Pevely will be shutting down your
> establishment – Pevely Hospitality, LLC [sic] d/b/a/ Super 8 Motel – located at
> 1711 Route z Pevely, MO 6307 [sic] on Friday, December 3, 2021.
>
> Your establishment has committed and failed to address multiple building, safety
> and health violations including as of the date of this letter.  The Super 8 has had
> over 330 police call to your establishment year-to-date with over 360 police calls
> in 2020.  You will have two (2) weeks to have all your tenets [sic] off the
> premises.

11.      In response to the City Letter, counsel for Plaintiffs contacted Robert Murray, counsel for the City, seeking information related to the City Letter, the basis for the City's proposed actions, and any supporting documentation for the proposed actions (the "Plaintiffs' Response"). The substance of the Plaintiffs' Response is set forth below:

> Thank you for the email yesterday about the extension of any potential action until December 10, 2021.
>
> Based upon our discussion, I remain very confused as to why or how the City intends to take any action against the Super 8. For many months, the owners have been working with the City and have addressed all of the City's concerns. To my knowledge, there is not a single action item still open. During the last inspection, no problems were cited or identified. The letter came as a complete surprise.
>
> The hotel has been working very hard to improve. The owner has spent hundreds of thousands of dollars on repairs and improvements. He has plans to spend almost as much again in the next 12-18 months. The property has passed all inspections, including the State Lodging Inspection in October 2021. I have attached copies of all the inspection reports and certificates.
>
> ****
>
> Finally, please provide me with any legal basis for the proposed action against the Super 8. Under what ordinance or authority does the City believe it can close down the Super 8 under these circumstances? There is mention in the letter from the City about use of police resources. Calls for service lists are very subjective and subject to interpretation and manipulation. I would ask the City to provide any documentation for the alleged calls of service cited in the letter, including information sufficient to identify the reason for the service, the date and time of the service, and any action taken as a result of the service.
>
> Bottomline, I believe a meeting with the City Administrator would be helpful to answer any questions that he might have. I thought the last meeting with the Mayor and the inspector was helpful. I hope this would be as well.

A copy of the Plaintiffs' Response is attached hereto as Exhibit B.

12.      The City has not provided Plaintiffs with any of the information requested in the Plaintiffs' Response. The City did, however, extend the proposed date of closure to December 10, 2021.

13.     Beginning in early 2021, the City had performed various inspections of the Property, and demanded that Plaintiffs complete certain repairs and perform certain work at the Property.  Meetings and communications were held between PHG, its manager Shaiq Amir, the manager Shaiq Amir, and their counsel on the one hand, and the City, its building inspector, and the City's counsel on the other hand.  The City administrator had not been hired by the City at the time and was not a party to those communications.

14.     PHG completed the requested work and repairs.

15.     Since completing the work and repairs set forth in paragraph 13 above, the Property has passed its Lodging Inspection from the State of Missouri, Department of Health & Senior Services; its safety inspection from the State of Missouri, Department of Public Safety; its annual fire sprinkler inspection; and its Fire Inspection from the  Dunklin Fire Protection District.  See Exhibit B.

16.     Since purchasing the Property in 2018, Plaintiff has spent more than $300,000, improving the Property.  Consequently, the revenue from customers and returning customers has increased dramatically as the Property has continued to improve .

17.     Neither the City Letter, nor the City apprised Plaintiffs of any of the following facts or matters concerning the Property:

        a.     The specific actions that PHG and Amir were required to perform or failed to perform with respect to the Property in order to avoid closure of the Property;

        b.     The specific steps that PHG and Amir were required to take or failed to take with respect to the Property in order to avoid closure of the Property;

     c.     The specific ordinances, code sections, laws or policies that PHG and Amir failed to observe or were required to observe in order to avoid closure of the Property; and

     d.     The specific operational requirements that PHG and Amir failed to observe in order to avoid closure of the Property.

18.     The only expressed basis for closure of the Property – the number of police calls for service – is false and misleading, and the City knows that it is false and misleading, in that:

     a.     The City specifically targeted the Property for police patrols while not similarly patrolling other businesses;

     b.     The calls for service are misleading and fail to accurately report the types of crime in the City, thereby giving the false impression that crime was occurring at a significantly higher rate at the Property;

     c.     The number of calls for service related to the Property are falsely inflated because many of the calls were "self-initiated calls" unrelated to any reported criminal activity at the Property; and

     d.     The City did not provide the back-up data to Plaintiffs before the moving to close the Property.

19.     The City has failed to state the legal basis for the closure of the Property or indicate the evidence on which it was based, and the City failed to put forth any such reasons or indication of evidence on which it relied in writing.

20.     If the City closes the Property or revokes the business licenses, Wyndham will likely terminate the Franchise Agreement with PHG and Amir, thereby causing PHG and Amir to lose their Super 8 franchise.

21.     The aforesaid actions of the City:

    a.      Violated the constitutional due process rights of PHG and Amir;

    b.      Were in excess of the statutory authority or jurisdiction of the City;

    c.      Violated the procedural due process rights of PHG and Amir;

    d.      Violated the substantive due process rights of PHG and Amir;

    e.      Were unsupported by competent and substantial evidence;

    f.      Were made upon unlawful procedure or without a fair hearing;

    g.      Were arbitrary, capricious, and unreasonable;

    h.      Involved an abuse of discretion; and

    i.      Were truly irrational.

## COUNT I
### (VIOLATION OF 42 U.S.C. SECTIONS 1981 and 1983)

COME NOW Plaintiffs, by and through undersigned counsel, and for their cause of action in Count I against the Defendant City of Pevely, state as follows:

22.     Plaintiffs restate and incorporate by reference Paragraphs 1 through 21 as if fully stated herein.

23.     The City's decision to close the Property was performed under color of state.

24.     Neither the City Letter nor the City apprised PHG and Amir of any of the following facts or matters (collectively, the "Closure Reasons") concerning the Property:

    a.      The specific actions that PHG and Amir were required to perform or failed to perform with respect to the Property in order to avoid closure of the Property;

    b.      The specific steps that PHG and Amir were required to take or failed to take with respect to the Property which they were required to perform in order to avoid closure of the Property;

c.      The specific ordinances, code sections, laws, or policies that PHG and Amir failed to observe or were required to observe in order to avoid closure of the Property; and

d.      The specific operational requirements that PHG and Amir failed to observe in order to avoid closure of the Property.

25.     Neither the City Letter nor the City apprised the Plaintiffs of any of the following facts or matters concerning the closure of the Property, some or all of which were required to satisfy the procedural due process requirements of 42 U.S.C. § 1983 and the United States Constitution and Constitution of the State of Missouri:

a.      The legal and factual bases and grounds for the purported closure of the Property;

b.      The right to a hearing;

c.      The evidence in support of the closure of the Property;

d.      The actions that Plaintiffs must take or failed to take to prevent the closure of the Property;

e.      The right of Plaintiffs to present evidence in opposition to closure of the Property; or

f.      The burden of proof of the City in its pursuit of the closure of the Property.

26.     The City's decision to close the Property was arbitrary and capricious, truly irrational, without due process, and further deprived Plaintiffs of their substantive rights, privileges, and immunities secured by the United States Constitution as follows:

    a.     The City's decision to close the Property was without competent and substantial evidence of the causation contemplated by *City of St. Louis v Varahi*, 39 S.W.3d 531 (Mo. Ct. App. 2001) and otherwise;

    b.     The City's decision to close the Property was based on evidence that, in whole or in part, was manipulated, distorted, and falsely represented with respect to the operation of the Property, and it was therefore not competent and substantial evidence of the causation contemplated by *City of St. Louis v Varahi*, 39 S.W.3d 531 (Mo. Ct. App. 2001) and otherwise;

    c.     The City's decision to close the Property, and not to hold hearing or provide information as to the basis of the City's actions were based, in whole or in part, on the ethnic origin or the religion of Amir and his father;

    d.     The City's decision to close the Property was based, in whole or in part, on the improper law enforcement activities and operations by the City.

27.    The City's actions as described herein were truly irrational and additionally constitute a violation of 42 U.S.C. §1983.  Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .

28.    The City's actions as described herein additionally were truly irrational and constitute a violation of 42 U.S.C. §1981.  Section 1981(a) provides in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

29.     The rights protected by § 1981(a) are protected against impairment under color of state law.

30.     The City's actions as described herein were performed under color of state law, including, but not limited to, the City codes and ordinances, and the improper use of law enforcement activities or operations, and were truly irrational.

31.     The City's actions impair Plaintiffs' ability to make and enforce contracts, in violation of § 1981.

32.     The City's actions as described herein also deprived Plaintiffs of the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens in violation of § 1981 because, upon information and belief, the owners of the other businesses were not, are not, have not been closed despite operating similar businesses, and one or more of such other owners are white citizens of the United States.

33.     As a result, the City selectively applied and enforced its laws against Plaintiffs, but not against other business owners, all in violation of §§ 1981 and 1983.

34.     At all relevant times, the City was also aware that PHG and Amir were operating the Property pursuant to a Franchise Agreement by reason of the fact that the Hotel was operated under the Super 8 flag, and the business license held by PHG and Amir was necessary to such a Franchise Agreement, and therefore the City knew of the relationship between PHG, Amir, and Wyndham.

35.     The City's actions and use of its police powers, as described herein, will interfere with, intentionally induce, and cause a breach with respect to the Franchise Agreement.

36.     The City knows that its actions in closing the Property will cause PHG and Amir to breach the Franchise Agreement.

37.     The City knows that if it causes Plaintiffs to breach the Franchise Agreement with Wyndham, that such a breach would cause or likely will cause Wyndham to revoke the Franchise Agreement to operate a Super 8 franchise on the Property.

38.     The City knows that if it causes the breach of the Franchise Agreement, then Plaintiffs would be unable to successfully resume operation of the Property, even if PHG and Amir were successful on their Complaint for judicial review of a non-contested case before this Court.

39.     Therefore, the City's actions constituted not only an intentional and tortious interference with the relationship between Plaintiffs and Wyndham, but they also constituted an intentional and tortious interference with the rights of Plaintiffs to pursue their protected rights to judicial review of a non-contested case before this Court.

40.     The City knows that if it could intentionally induce or cause a breach of the Franchise Agreement, then it could eliminate PHG's and Amir's ability to operate the Hotel on the Property, or recover the full value of the Property and the economic value of the Hotel and business operations on the Property, thereby forcing PHG and Amir to sell the Property, in violation of the rights of PHG and Amir as protected by the United States Constitution and laws, and Missouri Constitution and laws.

41.     The aforesaid actions of the City:

    a.     Violated the constitutional due process of PHG and Amir;

    b.     Violated the procedural due process rights of PHG and Amir;

    c.     Violated the substantive due process rights of PHG and Amir;

    d.      Were in excess of the statutory authority or jurisdiction of the City;

    e.      Were unsupported by competent and substantial evidence;

    f.      Were made upon unlawful procedure or without a fair hearing;

    g.      Were arbitrary, capricious, and unreasonable;

    h.      Involved an abuse of discretion;

    i.      Constituted a violation of the property rights of PHG and Amir by reason of the City's intentional interference with the Franchise Agreement and the property rights; and

    j.      Were truly irrational.

42.      As a direct and proximate result of the City's actions as described herein, PHG, and Amir directly and indirectly as the sole owner of PHG, and as a party and/or third-party beneficiary under the Franchise Agreement, have and will sustain damages in amounts not yet fully known, but including the following, among others:

    a.      Loss of Amir's investment;

    b.      The loss of the Franchise Agreement, including the payment of liquidated damages under the Franchise Agreement;

    c.      The loss of value and damage to the tangible Property and rights with respect to the Property and the business;

    d.      The loss of revenue;

    e.      The loss of, or impact on, the ability to make payments due on financing obligations;

    f.      The loss of value of the Property;

    g.      Loss of use of the Property;

h.      Damage to Amir's reputation and the Property, including injuries arising from the City's disparagement of Amir, its interference with the reputation, business, and operation of the Hotel and the Property, and its unreasonable placement of Amir in a false light;

i.      The loss of ability to engage in the ownership and operation of other businesses related to the service industry;

j.      Attorneys' fees and costs incurred in connection with this action; and

k.      Other damages as of now not yet known.

43.      Under 42 U.S.C. §1989, Amir is entitled to an award of his attorneys' fees for the City's violation of 42 U.S.C. §§1981 and 1983.

WHEREFORE, Plaintiffs respectfully pray this Court for judgment in their favor against the City of Pevely, Missouri in an amount in excess of $75,000.00, for their costs, attorneys' fees, and for such other and further relief as this Court deems fair and reasonable.

**COUNT II**
**(VIOLATION OF 42 U.S.C. SECTIONS 1983**
**(PROCEDURAL DUE PROCESS))**

COME NOW Plaintiffs, by and through undersigned counsel, and for their cause of action in Count II against the Defendant City of Pevely, state as follows:

44.      Plaintiffs  restate and incorporate by reference Paragraphs 1 through 43 as if fully stated herein.

45.      The City's decision to close the Property, with or without a public hearing, was arbitrary and capricious, truly irrational, without due process, and further deprived Plaintiffs of substantive rights, privileges, and immunities secured by the United States Constitution as follows:

a.      The City Letter failed to adequately apprise Plaintiffs of the basis for the closure of the Property, thereby failing to allow for an opportunity on the part of Plaintiffs to defend against said action;

b.      The City's decision to close the Property was without competent and substantial evidence of the causation contemplated by *City of St. Louis v Varahi*, 39 S.W.3d 531 (Mo. Ct. App. 2001) and otherwise;

c.      The City's decision to close the Property was based on evidence that, in whole or in part, was false, manipulated, distorted, and falsely represented with respect to the operation of the Property, and it was therefore not competent and substantial evidence of the causation contemplated by *City of St. Louis v Varahi*, 39 S.W.3d 531 (Mo. Ct. App. 2001) and otherwise, including, but not limited to, the following:

(1)      The City specifically targeted the Property for police patrols while not targeting other businesses, which in fact skewed the calls for service;

(2)      The number of calls for service related to the Property were falsely inflated because many of the calls were "self-initiated calls" unrelated to any reported criminal activity at the Property, and similar "self-initiated calls" were not performed at the other businesses; and

(3)      The City did not provide the back-up data to the Plaintiffs, thereby failing to give Plaintiffs the purported justification for the City's actions and preventing Plaintiffs from presenting any defense.

d.      The City's decision to close the Property was made despite the fact that most or all of the events upon which the City allegedly based its decision were not

preventable nor the result of any action on behalf of the Plaintiffs, thereby rendering the decision arbitrary, capricious, and truly irrational;

e.     The City's decision to close the Property were not based on uniform standards and were not uniformly applied, thereby rendering the decision to be truly irrational;

f.     The City's decision not to hold a public hearing and to close the Property was based, in whole or in part, on the ethnic origin or the religion of Amir and his father; and

g.     The City's decision to close the Property was based, in whole or in part, on the improper law enforcement activities and operations by the City.

46.     As a result, the City's actions deprived PHG and Amir of the right to be notified and heard at a meaningful time so as to enable Plaintiffs to address the allegations before being deprived of their rights with respect to operation of the Property, and their other rights with respect to the same.

47.     The failure of the City to provide PHG and Amir with the basis for their actions and a hearing to address the same, were procedural deficiencies that deprived them of the opportunity to respond and prevent the closure of the Property.

48.     As a result, the failure of the City's actions violated the procedural due process rights of PHG and Amir.

49.     The City's actions as described herein were truly irrational and additionally constitute a violation of 42 U.S.C. § 1983.  Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .

50.     The City's actions as described herein were performed under color of state law, including, but not limited to, the City's codes, ordinances, regulations, laws and/or policies, and the improper use of law enforcement activities or operations, and were truly irrational.

51.     The City's actions as described herein will cause Plaintiffs to lose their contractual Franchise Agreement with Wyndham, and therefore, impair their ability to make and enforce contracts, in violation of § 1983.

52.     The City's actions as described herein also deprived PHG and Amir of the full and equal benefit of all laws and proceedings for the security of persons and property because, upon information and belief, the owners of the other businesses were not required to undertake and perform the requirements imposed upon Plaintiffs, and upon information and belief, one or more of such other owners are white citizens of the United States.

53.     As a result, the City selectively applied and enforced its laws against PHG and Amir, but not against other business owners, all in violation of § 1983.

54.     At all relevant times, the City was also aware that PHG and Amir were operating the Property pursuant to a Franchise Agreement by reason of the fact that the Hotel was operated under the Super 8 flag, and the business license held by PHG and Amir were necessary to such a

franchise agreement, and therefore the City knew of the relationship between PHG, Amir, and Wyndham.

55.     The City's actions and use of its police powers, as described herein, interfered with, will intentionally induce, and cause a breach with respect to the Franchise Agreement.

56.     The City knows that its actions in closing the Property will cause PHG and Amir to breach the Franchise Agreement with Wyndham.

57.     The City knows that if it causes PHG and Amir to breach the Franchise Agreement with Wyndham, that such a breach will cause or likely cause Wyndham to revoke the Franchise Agreement to operate a Super 8 Hotel on the Property.

58.     The City knows that if it causes the above and foregoing breach of the Franchise Agreement, then PHG and Amir would be unable to successfully resume operation of the Hotel on the Property, even if PHG and Amir were successful on their Complaint for judicial review of a non-contested case before this Court.

59.     Therefore, the City's actions constituted not only an intentional and tortious interference with the relationship between PHG, Amir, and Wyndham, but they also constituted an intentional and tortious interference with the rights of PHG and Amir to pursue their statutorily protected rights to judicial review of a contested and non-contested case before this Court.

60.     The aforesaid actions of the City:

      a.     Violated the constitutional due process of PHG and Amir;

      b.     Violated the procedural due process rights of PHG and Amir;

      c.     Violated the substantive due process rights of PHG and Amir;

      d.     Were in excess of the statutory authority or jurisdiction of the City;

e.      Were unsupported by competent and substantial evidence upon the whole record;

f.      Were made upon unlawful procedure or without a fair hearing;

g.      Were arbitrary, capricious, and unreasonable;

h.      Involved an abuse of discretion;

i.      Constituted a violation of the property rights of PHG and Amir by reason of the City's intentional interference with the Franchise Agreement; and

j.      Were truly irrational.

61.      As a direct and proximate result of the City's actions as described herein, PHG and Amir sustained, or are likely to sustain, damages in amounts not yet fully known, but including the following, among others:

a.      Loss of the Amir Investment;

b.      Likely loss of the Franchise Agreement, including the payment of liquidated damages under the Franchise Agreement;

c.      The loss of value and damage to the tangible Property and rights with respect to the Property and the business;

d.      The loss of revenue;

e.      The loss of, or impact on, the ability to make payments due on the Property's financing;

f.      The loss of value of the Property;

g.      Loss of use of the Property;

h.      Damage to Amir's reputation and the Property, including injuries arising from the City's disparagement of Amir, its interference with the reputation, business, and

operation of the Hotel and the Property, and its unreasonable placement of Amir in a false light;

i.    The loss of ability to engage in the ownership and operation of other businesses related to the service industry;

j.    Attorneys' fees and costs incurred in connection with this action; and

k.    Other damages as of now not yet known.

62.    Under 42 U.S.C. § 1989, Amir is entitled to an award of attorneys' fees for the City's violation of 42 U.S.C. § 1983.

WHEREFORE, Shaiq Amir respectfully prays this Court for judgment in his favor against the City of Sunset Hills, Missouri in an amount in excess of $75,000.00, for their costs, attorneys' fees, and for such other and further relief as this Court deems fair and reasonable.

**COUNT III**
**(TORTIOUS INTERFERENCE WITH CONTRACT)**

COME NOW Plaintiffs, by and through their undersigned counsel, and for their cause of action in Count III against the Defendant City of Pevely, state as follows:

63.    Plaintiffs  restate and incorporate by reference Paragraphs 1 through 62 as if fully stated herein.

64.    The City's actions, as described herein, tortiously interfered with, intentionally induced, and/or will cause a breach with respect to the Franchise Agreement.

65.    The City knew or should have known that if it caused PHG and Amir to breach the Franchise Agreement, that such a breach would cause or likely cause Wyndham to revoke its Franchise Agreement to operate a Super 8 on the Property.

66.    Therefore, the City's actions constituted not only an intentional and tortious interference with the relationship between Plaintiffs and Wyndham.

18

67.    The City's actions were unjustified.

68.    As a direct and proximate result of the City's actions as described herein, PHG and Amir sustained, or is likely to sustain, damages in amounts not yet fully known, but including the following, among others:

    a.    Loss of the Amir Investment;

    b.    Likely loss of the Franchise Agreement, including the payment of liquidated damages under the Franchise Agreement;

    c.    The loss of value and damage to the tangible Property and rights with respect to the Property and the business;

    d.    The loss of revenue;

    e.    The loss of, or impact on, the ability to make payments due on the Property's financing;

    f.    The loss of value of the Property;

    g.    Loss of use of the Property;

    h.    Damage to Amir's reputation and the Property, including injuries arising from the City's disparagement of Amir, its interference with the reputation, business, and operation of the Hotel and the Property, and its unreasonable placement of Amir in a false light;

    i.    The loss of ability to engage in the ownership and operation of other businesses related to the service industry;

    j.    Attorneys' fees and costs incurred in connection with this action; and

    k.    Other damages as of now not yet known.

WHEREFORE, Plaintiffs respectfully prays this Court for judgment in his favor against the City of Pevely, Missouri in an amount in excess of $75,000.00, for such punitive damages as are fair and reasonable, for their costs, attorneys' fees, and for such other and further relief as this Court deems fair and reasonable.

**COUNT IV**
**(JUDICIAL REVIEW OF NON-CONTESTED CASE)**

COME NOW Plaintiffs, by and through its undersigned counsel, and for their cause of action in Count IV against Defendant the City of Pevely, herewith states as follows:

69.     Plaintiffs restate and incorporate by reference Paragraphs 1 through 68 as if fully stated herein.

70.     The decision of the City constituted a non-contested hearing for the purpose of the Missouri Administrative Procedure Act, Rev. Mo. Stat. § 536.150.

71.     Because the City's decision is a non-contested case for purposes of § 536.150, Plaintiffs are entitled to judicial review of the decision in this Court.

72.     The City Letter and the City's decision to close the Property fail to provide for the following procedures and processes:

    (a)     The filing of a document such as an information, petition, complaint, or other document to initiate a proceeding;

    (b)     A hearing;

    (b)     A notice of the issues to be presented at a hearing;

    (c)     Oral evidence to be taken under oath and subject to cross-examination at a hearing;

    (d)     The making of a record of a hearing;

    (e)     Adherence to evidentiary rules at a hearing, and;

(f)     Written decisions including findings of fact and conclusions of law after the hearing.

73.     The acts and decision of the City set forth above, were unconstitutional, unreasonable, arbitrary and capricious under Mo. Rev. Stat. § 536.150.

WHEREFORE, Plaintiffs pray that the Court review the acts and decision of the City, that the Court declare the act and decision of the City to close the Property to be null, void, and of no effect, that the Court enter relief by way of damages and injunctive relief as is described below, that the Court award Plaintiffs their costs and attorneys' fees, and for entry of such other and further relief as the Court deems fair and reasonable.

### COUNT VI
### (INVERSE CONDEMNATION)

COME NOW Plaintiffs, by and through their undersigned counsel, and for their cause of action in Count VI against the Defendant City of Pevely, state as follows:

74.     Plaintiffs re-state and incorporate by reference Paragraphs 1 through 73 as if fully stated herein.

75.     The Missouri State Constitution bars the taking of private property without just compensation.  Mo. Const. Art. I §26.

76.     Additionally, under the United States Constitution, private property shall not "be taken for public use, without just compensation." U.S. Const., amend. V.

77.     "When a taking occurs, the owner is entitled to be put in as good a position pecuniarily as if his property had not been taken." *Clay County Realty Co. v. City of Gladstone*, 354 S.W.3d 859, 863 (Mo. banc 2008).

78.     "Inverse condemnation is a cause of action against a governmental agency to recover the value of the property taken by the agency though no formal exercise of the power of

21

eminent domain has been completed." *Dulany v. Mo. Pac. R.R. Co.*, 766 S.W.2d 645, 648 (Mo.

Ct. App. 1988).  "Inverse condemnation may be established where an invasion or appropriation

of a valuable property right that caused injury can be shown."  *Clay County*, 354 S.W.3d at 864.

79.     "Thus, the ordinary and natural meaning of 'inverse condemnation' is a cause of

action to seek just compensation for a governmental taking of property through an arbitrary or

unreasonable interference with property rights."  *County of Scotland v. Missouri Public Entity*

*Risk Management Fund*, 2017 WL 4622129 (Mo. Ct. App. 2017).

80.     It was the City's intention to take the Property through administrative action,

targeting PHG with illegal and improper administrative actions, rather than to acquire the

Property through legitimate means such as eminent domain or by paying PHG fair and just

compensation for the Property.

81.     As a result of the City's actions, and as set forth more fully above, PHG and Amir

will lose the ability to operate the Property, to enjoy the use of the Property, and will be forced to

sell the Property, which would be more beneficial to the City than continued operation of the

Property as a hotel.

82.     The City's actions constitute inverse condemnation through an arbitrary and

unreasonable interference with PHG's property rights to operate the Property.

83.     PHG did not receive just compensation for the Property.

84.     As a direct and proximate result of the City's actions as described herein, PHG

and Amir also have or will sustain damages in amounts not yet fully known, but including the

following, among others:

    a.     The loss of the Franchise Agreement;

b.      The loss of value and damage to the Property and rights of PHG with respect to the Property and the business of PHG;

c.      The loss of guests and customers;

d.      The loss of revenue;

e.      The increased cost of property and liability insurance on the Property;

f.      The loss of employees;

g.      The loss of, or impact on, the ability to make payments due on the Property financing;

h.      The loss of value of the Property and the value of collateral for the Property financing;

i.      Damage to the reputation of the PHG, Amir and the Property, including injuries arising from the City's disparagement of PHG, its interference with the reputation, business, and operation of the Hotel and the Property, and its unreasonable placement of PHG and Shaiq Amir in a false light;

j.      Increased expenses of operation of the Property;

k.      Increased premiums for insurance on the Property;

l.      Attorneys' fees and costs incurred in connection with this action; and

m.      Other damages as of now not yet known.

WHEREFORE, Plaintiffs respectfully pray this Court for judgment in their favor against the City of Pevely, Missouri in an amount in excess of $75,000.00, for their costs, attorneys' fees, and for such other and further relief as this Court deems fair and reasonable.

## COUNT VII
### (TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF)

COME NOW Plaintiffs, by and through their undersigned counsel, and for their cause of

23

action in Count VI against the Defendant City of Pevely, herewith state as follows:

85.     Plaintiffs re-state and incorporate by reference Paragraphs 1 through 84 as if fully stated herein.

86.     Plaintiffs are also entitled to injunctive relief from this Court.  To determine whether injunctive relief is warranted, the Court must balance the threat of irreparable harm to movant, the potential harm to the nonmoving party should an injunction issue, the likelihood of success on the merits, and the public interest.  Dataphase Sys. v. C L Sys., 640 F.2d 109, 113–14 (8th Cir. 1981) (*en banc*).  Injunctive relief is an extraordinary remedy, and the burden of establishing the propriety of such relief is on the movant.  Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).  "The party seeking injunctive relief bears the burden of proving all the Dataphase factors." Id.

87.     The courts recognize that a cause of action for injunctive relief is permissible under 42 U.S.C. § 1983.

88.     Here, the City is attempting to illegally and improperly close down the Property. Allowing the Property to remain open is the status quo.  There is no harm to the City in allowing the Property to remain open.

89.     On the other hand, closing the Property will irreparably harm Plaintiffs because they have invested substantial sums of money in the Property that they cannot recover while closed; they will be in breach of the Franchise Agreement; the Property will lose customers to other businesses; Plaintiffs risk defaulting on the Property's financing; the employees will lose their jobs just before the holiday season; the Property will lose their employees to other jobs; and they will suffer reputation damage as the Property sits empty.

90.     Plaintiffs have a very strong likelihood of success on the merits because the City's actions violate Plaintiffs' rights under the United States Constitution, the Missouri constitution, and state and federal law.

91.     The public interest factor weighs in favor of granting the requested injunctive relief.  There is no reason to close the Property just before the holiday season, preventing customers from staying locally when visiting friends and family, and putting the employees out of work.

92.     Plaintiffs have no adequate at remedy to enforce their rights to remain open.

WHEREFORE, Plaintiffs respectfully request that this Court enter its judgment and order of Temporary, Preliminary and Permanent Injunctive Relief:

a.     prohibiting Defendant, until further order of this Court, from closing the Property;

b.     prohibiting, until further order of this Court, Defendant from refusing to allow the Property to continue operation;

c.     prohibiting, until further order of this Court, Defendant from suspending, revoking, or denying the renewal of, the Property's business license;

d.     granting such other and further relief as this Court deems just and proper, including but not limited an award of attorneys' fees, expenses and costs incurred herein.

WITZEL, KANZLER & DIMMITT, LLC

By:   /s/ Jay L. Kanzler
  Jay L. Kanzler Jr. #41298
  2001 S. Big Bend Blvd.
  St. Louis, MO 63117
  314-645-5367
  314-645-5387(fax)
  jaykanzler@wkllc.com

Attorneys for Plaintiffs